UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEDRO GARCIA DUARTE,<br><br>               Petitioner,<br><br>    v.<br><br>WARDEN OF ADELANTO DETENTION FACILITY; ERNESTO SANTACRUZ, Jr.; KRISTI NOEM; PAM BONDI; and ADELANTO DETENTION FACILITY,<br><br>               Respondents. | Case No. 5:25-cv-03319-SPG-KES<br><br>**ORDER GRANTING PETITIONER'S MOTION FOR TEMPORARY RESTRAINING ORDER [ECF NO. 5]** |

Before the Court is the Motion for Temporary Restraining Order, (ECF No. 5 ("Motion")), filed by Petitioner Pedro Garcia Duarte ("Petitioner"). The Court has read and considered the Motion and concluded that it is suitable for decision without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. Having considered the parties' submissions, the relevant law, and the record in this case, the Court GRANTS the Motion.

I.   BACKGROUND

Except where otherwise stated, the following allegations are taken from Petitioner's habeas petition and are uncontested by Respondents. (ECF No. 1 ("Petition")). Petitioner is a native of Mexico who has resided in the United States since 1985. (*Id.* ¶¶ 2, 27). On

November 2, 2025, Petitioner was arrested by Immigration and Customs Enforcement ("ICE") and transferred to Adelanto Detention Facility, where he remains detained without a bond hearing. (*Id.* ¶¶ 4, 19). Petitioner has no criminal history. (*Id.* ¶ 33).

Petitioner is the father of a U.S. citizen minor child who has an autism diagnosis and requires substantial daily support. (*Id.* ¶ 3). Petitioner is also the primary support for his spouse, who is blind. (*Id.*). Petitioner himself suffers from serious medical conditions, relies on a gastric bag, and urgently requires colorectal surgery. (*Id.* ¶¶ 3, 8). In the instant Motion, Petitioner indicates that he had an appointment for colorectal surgery scheduled for November 24, 2025, and a urology appointment on December 12, 2025, both of which he was unable to attend due to his detention. (Mot. at 6). Respondents object that Petitioner is receiving adequate medical care, though they do not dispute that he missed the scheduled surgery. (ECF No. 7 ("Opposition") at 23).

Petitioner states that he submitted a request for humanitarian parole based on his medical conditions, but that ICE summarily denied the request without addressing the medical evidence he provided. (Petition ¶ 25). On December 1, 2025, Petitioner submitted a request for a bond redermination to the Immigration Judge ("IJ"), (*id.* ¶ 6), which the IJ denied for lack of jurisdiction, concluding that Petitioner was subject to mandatory detention under 8 U.S.C. § 1225(b)(2), (Mot. at 23).

Petitioner brought the instant Habeas Petition on December 9, 2025, naming as Respondents the Warden of the Adelanto Detention Facility, ICE Field Office Director Ernesto Santacruz Jr., Secretary of Homeland Security Kristi Noem, and Attorney General Pam Bondi ("Respondents"). Petitioner asserts claims for violation of the Immigration and Nationality Act ("INA"), unreasonable search and seizure, and due process. As relief, Petitioner seeks a writ of habeas corpus ordering his immediate release, ordering his release on conditions of release, or requiring an individual bond determination. Petitioner also seeks a permanent injunction prohibiting Respondents from further unlawfully detaining Petitioner. (Petition at 21).

Petitioner brought the instant Motion on December 15, 2025. (Mot.). Petitioner seeks a temporary restraining order requiring his immediate release or, in the alternative, granting a bond hearing within 48 hours before a neutral adjudicator. (*Id.* at 10). Respondents opposed the Motion on December 18, 2025. (ECF No. 7 ("Opposition")). Petitioner has not filed a reply brief.

## II.   LEGAL STANDARD

The standard for issuing a temporary restraining order is essentially the same as that for issuing a preliminary injunction. *See Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) ("[T]he legal standards applicable to TROs and preliminary injunctions are substantially identical.") (citation omitted). A plaintiff may secure a temporary restraining order upon establishing that: (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). "[S]erious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). "In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Winter*, 555 U.S. at 24 (citing *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987)). "'In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.'" *Id.* (citing *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).

In deciding an application for a temporary restraining order, the court is permitted to consider the parties' pleadings; declarations, affidavits, and exhibits submitted in support of and in opposition to the application. *See Earth Island Inst. v. Nash*, No. 1:19-cv-01420-DAD-SAB, 2020 WL 1936701, at *6 (E.D. Cal. Apr. 21, 2020) ("[I]n considering a motion

for a preliminary injunction, a court may consider and rely upon declarations, affidavits, and exhibits submitted by the parties.") (citations omitted); *Harper v. Poway Unified Sch. Dist.*, 345 F. Supp. 2d 1096, 1119–20 (S.D. Cal. 2004) (considering declarations submitted by defendants to deny plaintiff's request for a preliminary injunction); *BOKF, NA v. Estes*, 299 F. Supp. 3d 1117, 1122 (D. Nev. 2018). "The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial." *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) (citations omitted). The urgency of the relief sought necessitates a prompt determination and can make it difficult to obtain admissible evidence. *Id.*

### III.  DISCUSSION

#### A.  Jurisdiction

Respondents first argue that the Court lacks jurisdiction to entertain Petitioner's action under 8 U.S.C. § 1252. Respondents rely primarily on § 1252(g), which they contend bars the Court from considering any claims arising out of Petitioner's detention, since post-detention claims necessarily arise from the Attorney General's decision to "commence proceedings." (Opp. at 13-14). Respondents also rely on §§ 1252(a)(5) and 1252(b)(9) to argue that any judicial review of claims arising from deportation proceedings must go to the court of appeals in the first instance. (*Id.* at 14-15).

##### 1.  Section 1252(g)

Section 1252(g) of Title 8 provides, "[e]xcept as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g).

In *Reno v. American-Arab Anti-Discrimination Commission* ("*AAADC*"), the Supreme Court instructed that § 1252(g) must be read narrowly to apply "only to three

discrete actions that the Attorney General may take: 'her decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *AAADC*, 525 U.S. 471, 482, 486 (1999) (quoting 8 U.S.C. § 1252(g)) (emphasis in opinion). The statute is not so sweeping as to include "any claim that can technically be said to arise from the three listed actions," *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018), and thus, decisions or actions that are a part of the deportation process, but not specifically the action of commencing proceedings, adjudicating cases, or executing removal orders are not jurisdictionally barred from judicial review. The Ninth Circuit, in accordance with *AAADC*, has held that § 1252(g) "does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders." *Ibarra-Perez v. United States*, 154 F.4th 989, 997 (9th Cir. 2025). Instead, as it relates to the execution of removal orders, the jurisdictional bar of § 1252(g) applies to "ICE's discretionary authority to decide when or whether to execute a removal order." *Id.* (internal quotation marks and citation omitted). For example, § 1252(g) does not apply to due process claims because such claims "constitute general collateral challenges to unconstitutional practices and policies used by [the removing] agency," and do not arise from the narrowly defined decisions to "commence proceedings, adjudicate cases, or execute removal orders." *Walters v. Reno*, 145 F.3d 1032, 1052 (9th Cir. 1998) (citing *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 492 (1991)).

      Here, Petitioner contests the validity of his detention, arguing that it violates the Due Process Clause of the Fifth Amendment, the INA, and the Fourth Amendment. Contrary to Respondents' assertions, Petitioner is not challenging the Attorney General's decision to commence removal proceedings against him, to adjudicate such proceedings, or to execute his removal. Respondents do not identify how Petitioner's claims fall into one of those three specific actions, instead arguing broadly that review of any "claims arising from such detention is barred under § 1252(g)." (Opp. at 14). This broad reading of § 1252(g) is directly contrary to Supreme Court and Circuit precedent requiring narrow application of the language. In the absence of argument showing how Petitioner's claims challenge

one of the three specific actions barred by § 1252(g), the Court is not jurisdictionally barred from reviewing Petitioner's claims.

2. Sections 1252(a)(5) and 1252(b)(9)

Next, citing 8 U.S.C. §§ 1252(a)(5) and 1252(b)(9), Respondents argue that Petitioner's claims may be brought exclusively to the court of appeals. Section 1252(a)(5) provides, "[n]otwithstanding any other provision of law . . . a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter." 8 U.S.C. § 1252(a)(5). Section 1252(b)(9), meanwhile, states, "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction . . . to review such an order or such questions of law or fact." 8 U.S.C. § 1252(b)(9).

The Court finds §§ 1252(a)(5) and 1252(b)(9) to be inapplicable here. Petitioner is not asking for review of an "order of removal," he is seeking review of his detention pending a decision on his removal. Respondents do not even suggest that there is an order of removal in place, let alone that this Petition has been brought to challenge such an order. Because there is no "order of removal" at issue here, § 1252(a)(5) is facially inapplicable. As to § 1252(b)(9), the Supreme Court has explained that this provision does not bar judicial review where the petitioner is "not asking for review of an order of removal; [is] not challenging the decision to detain them in the first place or to seek removal; and [is] not even challenging any part of the process by which their removability will be determined." *Jennings*, 583 U.S. at 294. Under *Jennings*, because Petitioner challenges only his continued detention pending a decision on his removal, § 1252(b)(9) does not apply.

**B.   *Winter* Factors**

    1.   Likelihood of Success on the Merits

Turning now to the merits of Petitioner's Motion, the parties primarily dispute the basis for Petitioner's detention. Petitioner argues that he is detained pursuant to 8 U.S.C. § 1226(a) and is therefore entitled to a bond hearing. (Mot. at 3-5). In opposition, Respondents rely on *Matter of Yajure Hurtado*, a recent decision from the Board of Immigration Appeals ("BIA"), which found that immigration judges "have no authority to redetermine the custody conditions of an alien who crossed the border unlawfully without inspection, even if that alien has avoided apprehension for more than 2 years." 29 I&N 216, 228 (BIA 2025). Relying on the BIA's interpretation, Respondents argue that, notwithstanding his presence in the United States for approximately 40 years, Petitioner remains an "applicant for admission" and is therefore subject to mandatory detention pending removal proceedings under 8 U.S.C. § 1225(b)(2)(A). (Opp. at 16-17).

Section 1226(a) provides, "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Pursuant to federal regulations, an alien detained under this provision is entitled to seek a bond hearing before an immigration judge. 8 C.F.R. § 236.1(d)(1); *see Jennings*, 583 U.S. at 306. Section 1225(b)(2)(A), meanwhile, provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a [removal] proceeding." 8 U.S.C. § 1225(b)(2)(A). This provision "mandate[s] detention of applicants for admission until" the removal proceedings "have concluded." *Jennings*, 583 U.S. at 297. The statute defines "applicant for admission" to include "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters)." 8 U.S.C. § 1225(a)(1).

In their Opposition, Respondents suggest that both § 1225(b)(2)(A) and § 1226(a) could be applicable to Petitioner based on their plain language. However, they argue that this creates an "irreconcilable conflict" between the two provisions, which they contend should be resolved by applying "the specific detention authority under § 1225 [] over the general authority found at § 1226(a)." (Opp. at 16-17). The Court finds no such irreconcilable conflict. Rather, any potential conflict can be avoided by interpreting the two provisions to apply to different classes of aliens—those who are "seeking admission" into the United States versus those who are already in the country. *See Watt v. Alaska*, 451 U.S. 259, 267 (1981) ("We must read [] statutes to give effect to each if we can do so while preserving their sense and purpose."). The Supreme Court has offered the same interpretation, describing § 1225(b) as authorizing "the Government to detain certain aliens *seeking admission into the country*" and § 1226(a) as authorizing "the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings." *Jennings*, 583 U.S. at 289 (emphasis added).

This interpretation is consistent with the plain language of § 1225. By its own terms, § 1225(b)(2)(A) applies only to those "applicants for admission" who are "seeking admission" to the United States. The statute does not define the term "seeking admission," but it would make little sense for this term to mean anything other than its plain meaning: those who are attempting to enter the United States. *See FDIC v. Meyer*, 520 U.S. 471, 476 (1994) ("In the absence of [a definition in the statute], we construe a statutory term in accordance with its ordinary or natural meaning."). The surrounding statutory language presupposes this interpretation, referring to a determination by "the examining immigration officer," implying that the determination is being made in response to a request for admission. Thus, while the statute defines "applicant for admission" to include some aliens already present in the United States, it only authorizes mandatory detention for those applicants in the process of seeking admission.

Respondents' interpretation would also render the newly enacted § 1226(c)(1)(E) meaningless, since "there would be no reason to except noncitizens who are inadmissible

under 8 U.S.C. § 1182(a)(6)(A)(i) *and* who have committed certain crimes from Section 1226 if that section does not apply to those inadmissible noncitizens in the first instance." *Benitez v. Noem*, 5:25-cv-02190-RGK-AS, ECF No. 11, at 5 (C.D. Cal. Aug. 26, 2026). Respondents' response that § 1226(c)(1)(E) is merely a "[r]edundanc[y] in statutory drafting," (Opp. at 21), is unpersuasive since "[i]t is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (internal quotation marks and citation omitted).

Confronted recently with identical facts, the vast majority of district courts across the country have also reached this same conclusion, including nearly every judge in this District who has considered the issue. *See, e.g.*, *Mosqueda v. Noem*, No. 5:25-cv-02304 CAS (BFM), 2025 WL 2591530 (C.D. Cal. Sept. 8, 2025) (Snyder, J.); *Diaz Orzuna v. Noem*, No. CV 25-10380-KK-ASx, 2025 WL 3640619 (C.D. Cal. Oct. 31, 2025) (Kato, J.); *Benitez*, 5:25-cv-02190-RGK-AS, ECF No. 11 (Klausner, J.); *Ding v. Janecka*, No. 5:25-CV-03184-DOC-JDE, 2025 WL 3453957 (C.D. Cal. Nov. 28, 2025) (Carter, J.); *Portillo v. Noem*, 5:25-cv-02892-JFW-PVC, ECF No. 8 (C.D. Cal. Oct. 31, 2025) (Walter, J.); *Helal v. Janecka*, No. 5:25-CV-02650-HDV-JC, 2025 WL 3190132 (C.D. Cal. Oct. 24, 2025) (Vera, J.); *Zecua v. Lyons*, No. 2:25-CV-09794-CV-PDX, 2025 WL 3150680 (C.D. Cal. Oct. 17, 2025) (Valenzuela, J.); *Sandoval Hernandez v. Noem*, No. 5:25-CV-02563-FMO (AGR) (C.D. Cal. Oct. 9, 2025) (Olguin, J.); *Pop v. Noem*, No. 5:25-CV-02589-SSS-SSC, 2025 WL 3050095 (C.D. Cal. Oct. 3, 2025) (Sykes, J.); *Arrazola-Gonzalez v. Noem*, No. 5:25-CV-01789-ODW-DFM, 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025) (Wright, J.); *Zavala v. Noem*, No. SA CV 25-2686 PA (DFMx), 2025 WL 3514086 (C.D. Cal. Dec. 4, 2025) (Anderson, J.); *cf. Altamirano Ramos v. Lyons*, No. 2:25-cv-09785-SVW-AJR, 2025 WL 3199872 (C.D. Cal. Nov. 12, 2025) (Wilson, J.). In the face of this body of law, the Court finds the "new and novel interpretation of Section 1225," *Diaz Orzuna*, 2025 WL 3640619, at *3, offered in *Matter of Yajure Hurtado* to be unpersuasive.

Because Petitioner was arrested in the United States following decades of residency, rather than while seeking admission into the United States, Petitioner's detention is pursuant to 8 U.S.C. § 1226(a), not § 1225(b)(2)(A). He is therefore entitled to seek a bond hearing before an immigration judge. The immigration judge's denial of a bond hearing was in error, and Petitioner's continued detention without a bond hearing is an ongoing violation of his constitutional due process rights. *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[O]nce an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."). Accordingly, the Court finds that Petitioner has demonstrated a likelihood of success on the merits of his due process claim.

### 2. Irreparable Harm

Next, the Court finds that Petitioner has established that he will suffer irreparable harm in the absence of a temporary restraining order. "[T]he deprivation of constitutional rights unquestionably constitutes irreparable injury," including those "imposed on anyone subject to immigration detention." *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017) (citation omitted). Thus, the Court's finding that Petitioner is being subjected to an ongoing violation of his due process rights is sufficient to constitute irreparable harm. However, Petitioner's harm goes beyond the denial of his due process rights. As Petitioner explains, Petitioner suffers from acute medical issues that require daily management, specialized care, and an urgent colorectal surgery. (Mot. at 6). Petitioner was scheduled for surgery on November 24, 2025, and for a urology appointment on December 12, 2025, but he was unable to attend those appointments due to his detention. While Respondents argue that Petitioner is receiving adequate medical care while in detention, they have not shown that a new colorectal surgery has been scheduled, nor have they rebutted Petitioner's showing of an urgent need for the procedure. As the Ninth Circuit has recognized, the denial of "needed medical care" constitutes irreparable injury. *Beltran v. Myers*, 677 F.2d 1317, 1322 (9th Cir. 1982). Accordingly, the Court finds that

Petitioner has adequately demonstrated irreparable harm. *See Aghajavadyha v. Noem*, No. 25cv3246-BTM-BJW, 2025 WL 3278018, at *2 (S.D. Cal. Nov. 24, 2025) (finding irreparable harm due to petitioner's "serious medical condition").

### 3. Balance of the Equities

The balance of equities and public interest merge when the Government is the party opposing the relief sought. *Nken v. Holder*, 556 U.S. 418, 435 (2009). As discussed above, Petitioner faces not only the deprivation of his constitutional rights, but also serious harm to his health. Furthermore, Petitioner's family faces serious hardships in his absence, given that Petitioner is the primary caretaker for his autistic son and visually impaired wife. As the Ninth Circuit has explained, "it is always in the public interest to prevent the violation of a party's constitutional rights," and "[t]he government also cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023). The Court therefore finds that Petitioner's concrete harms heavily outweigh Respondents' generic interest in "steady enforcement of its immigration laws." (Opp. at 22).

In sum, Petitioner has shown that he is likely to succeed on the merits of his due process claim, in that he has been detained pursuant to 8 U.S.C. § 1226(a) without a bond hearing, as guaranteed by federal regulations. Petitioner has also demonstrated that he and his family will suffer significant hardship absent injunctive relief. As recognized by other courts in this Circuit, in the context of immigration detention proceedings, the harm to Petitioner is "significant," while the potential harm to the government is "minimal." *See Pablo Sequen v. Kaiser*, 793 F. Supp. 3d 1114, 1120 (N.D. Cal. 2025) ("The only potential injury the government faces is a short delay in detaining [the petitioner] if it ultimately demonstrates to a neutral decisionmaker by clear and convincing evidence that her detention is necessary to prevent danger to the community or flight."). On balance, the

*Winter* factors therefore weigh in Petitioner's favor. The Court thus GRANTS Petitioner's Motion insofar as it seeks a bond hearing.[1]

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Petitioner's Motion and ORDERS as follows:

1. Respondents are ORDERED to provide Petitioner with an individualized bond hearing pursuant to 8 U.S.C. § 1226(a) no later than seven (7) days from the date this Order is issued;

2. If Petitioner is not provided a bond hearing within that time frame, Petitioner shall be immediately released; and

3. Respondents are ORDERED TO SHOW CAUSE in writing no later than seven (7) days from the date of this Order why the Court should not issue a preliminary injunction. Petitioner may file a Reply no later than ten (10) days from the date of this Order. The Court sets a hearing on whether a preliminary injunction should issue for Tuesday, January 6, at 10:00 a.m. The Court will accept a stipulated briefing schedule extending these dates on the condition that the parties agree to an extension of the TRO.

**IT IS SO ORDERED.**

DATED: December 23, 2025

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE

---

[1] In the Motion, Petitioner seeks either a bond hearing or an order immediately releasing Petitioner from ICE custody. (Mot. at 10). However, in discussing his likelihood of success on the merits, Petitioner focuses exclusively on the denial of a bond hearing. Thus, Petitioner has not shown that he is entitled to any other form of relief.